# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KARYN JAKUBIK, et al**<br><br>Plaintiffs,<br><br>v.<br><br>**SUSAN GIBSON, et al**<br><br>Defendants. | **CIVIL ACTION NO. 25-33** |

## MEMORANDUM RE: EQUAL PAY ACT

**Baylson, J.**                                                      **March 12, 2025**

The Court files this Memorandum after receiving "Notice of Plaintiffs' Election to Stand Upon Original Complaint" (the "Notice") (ECF 5) to provide additional grounds for its Order dismissing the Complaint filed in this case without prejudice.  ECF 3.

## INTRODUCTION – WOMEN'S ROLE IN OPERAS

In the world of opera, it is difficult—indeed impossible—to find any documentation that female opera singers are paid less than men.  However, there are many publications that discuss the dominant role of men in operas compared to the much lesser status granted to female opera characters.  There does not appear to be any published data that female opera singers are paid less than men for equal work—and it would be difficult to describe any particular opera role for a female as being "similarly situated" to another role of a male in the same or another opera.  However, there are definite patterns that appear in operas where women have less "authority" than men.  A prime example of this would be Wagner's Ring Cycle, which opens with the "Rhinemaidens" usually portrayed as soaring in flight, protecting the gold, assisted by a troop of dwarfs.  The next opera in the cycle, Die Walkure, features Brunnhilde, the daughter of the

demigod Wotan, who begins a very long nap as part of the royalty, but upon waking up finds herself an ordinary woman without any royal pedigree.

Mozart has some "take downs" for females in his operas.  Although, in the Magic Flute, the Queen of the Night starts out as royalty, with her servant, Papageno, by the end of the opera she has been disgraced and disappears into darkness.  Mozark also portrays two young women as mere maids.  First, the lovely Susanna in the Marriage of Figaro, spends much of her role resisting the advances of her employer, and in Cosi Fan Tutte, the outspoken maid to the two female principles, Despina, complains, lyrically and emphatically, about her subservient role in life—but there is no specific documentation that she is paid less than anyone similarly situated—indeed, there is no one in either opera similarly situated.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case is a companion to two other cases pending in this Court, Cartee-Haring v. Central Bucks School District, Civil Action No. 20-1995 and Marinello v. Central Bucks School District, Civil Action No. 21-2587 (referred to jointly as "Marinello").[1]  Because the instant action arises in response to the Court's Order decertifying the collective class and dismissing the former opt-in plaintiffs without prejudice in Marinello—in this Complaint, counsel joined together 130 of the former Marinello opt-in plaintiffs—the Court will summarize the relevant facts and procedural history from those cases below.

### A.  Companion Cases:  Cartee-Haring (20-cv-1995) and Marinello (21-cv-2587)

The plaintiffs in Marinello asserted claims under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1), alleging that the defendant school district, Central Bucks, paid female teachers less than

---

[1] Both cases were consolidated for all pretrial proceedings and trial.

male teachers similarly situated. In each year from at least 1985 through the present, Central Bucks has maintained Salary Schedules applicable to all fulltime faculty members employed by Central Bucks. These Salary Schedules, which consist of (1) rows (alternatively called "steps") and (2) columns, mandate a Central Bucks teacher's annual salary. The rows relate, in some fashion, to years of teaching experience. The columns are based on college degrees and additional credits. The parties in Marinello ultimately dispute whether Central Bucks has treated men and women equally under the EPA in its placement of men and women on the Salary Scale.

At the outset of the case, on February 28, 2022, Plaintiff Dawn Marinello filed a motion for certification of her EPA claim as a collective action under 29 U.S.C. § 216(b), ECF 27,[2] on behalf of herself and similarly situated female teachers. The Court held hearings on June 14, 2022 and June 28, 2022 at which several individuals testified, including the two plaintiffs. ECF 40, 49. The Court found the witnesses to be credible, and on August 24, 2022, the Court granted final certification of the collective action. ECF 54–55. Because of the nature of their testimony and for efficiency purposes, the Court bypassed the intermediate step of only granting conditional certification as possible under the Third Circuit's two-stage framework for collective certification.[3] See Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 85 (3d Cir. 2017) (explaining that the first step in the collective certification process is "conditional certification" and the second step is "final certification"). As the docket reflects, contentious discovery between the parties followed.

---

[2] All docket references in this Memorandum, unless otherwise stated, are to the docket in Marinello v. Central Bucks School District, Civil Action No. 21-2587.

[3] The Court determined that "to certify the class conditionally, then proceed with notice and opt-in specific discovery before proceeding to final certification, would be an inefficient use of judicial resources." ECF 54 at 12.

The Court held a final pretrial conference with counsel on May 16, 2024 and entered a final pretrial order setting a trial date. ECF 182. Ultimately, the trial commenced on July 23, 2024, and lasted through July 30, 2024, but the jury was unable to reach a unanimous verdict.

The history of pretrial proceedings in <u>Marinello</u>, however, is unfortunately riddled with serious missteps by plaintiffs' counsel which reflects plaintiffs' counsel's mismanagement of the former collective action.[4] This informed the Court's decision to decertify the collective class on August 1, 2024, and the Court's view on how <u>Marinello</u> must proceed following a mistrial. ECF 313.

### 1. Many Former Opt-in Plaintiffs Did Not Cooperate During Discovery

Throughout the discovery period, a significant portion of the (former) opt-in plaintiffs did not adhere to the Court's Orders. As a mechanism for streamlining discovery in the then-large collective action, counsel for the parties collaborated on a questionnaire for each of the opt-in plaintiffs to complete. However, more than 100 opt-in plaintiffs had not produced complete responses by June 30, 2023, the initial deadline to submit the completed questionnaire. ECF 187 at ¶ 8. Central Bucks filed a motion for sanctions, asking the Court to dismiss the non-responsive opt-in plaintiffs, but the Court agreed to extend the deadline to complete the questionnaire to October 10, 2023. <u>Id.</u>; ECF 129 at ¶ 2. The Court cautioned in its August 10, 2023 Order that there would be "[n]o further extensions." ECF 129 at ¶ 2.

Notwithstanding the Court's admonition, Central Bucks' subsequent motion to dismiss non-responsive plaintiffs stated that as of October 10, 2023, 128 of the opt-in plaintiffs did not submit all discovery requested. ECF 137 at ¶ 14. While the Court denied the defendant's Motion

---

[4] The same counsel in this action represents the <u>Marinello</u> plaintiffs.

without prejudice on February 29, 2024, the Court imposed certain conditions on the opt-in plaintiffs, ordering that each opt-in plaintiff within thirty days (1) complete the parties' agreed-upon questionnaire, (2) respond fully to the defendant's Requests for Admission, and (3) provide specific alleged damage information with supporting documentation. ECF 149 at ¶ 1. The Court again warned that "[a]ny opt-in member who fails to comply with this Order will be dismissed from the collective action. No further extensions." Id. at ¶ 1(c)(vi).

Still, not all the opt-in plaintiffs complied. On May 21, 2024, Central Bucks filed a second Motion to Dismiss 65 of the opt-in plaintiffs who did not properly respond to discovery requests. ECF 187. Plaintiffs' counsel did not respond to the Motion, and the Court Ordered on June 10, 2024 that plaintiffs must file a response within seven days.[5] ECF 203. On July 10, 2024, the Court granted the defendant's second Motion and dismissed without prejudice the 65 former opt-in plaintiffs who failed to meet their discovery obligations in violation of the Court's Order. ECF 239. The Court found that the six Poulis factors favored dismissal, see Poulis v. State Farm Casualty Company, 747 F.2d 863 (3d Cir. 1984), including finding that the plaintiffs "have demonstrated a history of dilatoriness by failing to provide discovery in response to the Court's August 10, 2023 Order (ECF 129) requiring questionnaire responses by October 10, 2023 with 'no further extensions' and the Court's February 29, 2024 Order (ECF 149) requiring responses by March 30, 2024 with 'no further extensions,'" ECF 239. As indicated, 65 of the opt-in plaintiffs did not provide the required discovery by the Court's March 30, 2024 deadline.

---

[5] Plaintiffs' counsel has failed to abide by several other Court-imposed deadlines. For instance, plaintiffs' counsel did not respond to two of Central Bucks' motions in limine filed on June 28, 2024 (ECF Nos. 223–24), notwithstanding that the governing final pretrial Order required responses to motions in limine within seven days. ECF 182 at ¶ 7. This necessitated the Court to order a response to the motions the week before trial. ECF 254. Most recently, plaintiffs' counsel never responded to three motions in limine that Central Bucks filed in November 2024 (ECF 343–45) in anticipation of a potential second trial.

### 2. Plaintiffs' Counsel Disregards Other Court-imposed Deadlines

Several evidentiary issues which arose during pretrial proceedings were decided against the plaintiffs because plaintiffs' counsel failed to follow deadlines imposed by the Court and by the Federal Rules of Civil Procedure.

### a. Statistical Evidence

On January 8, 2024, the Court imposed February 19, 2024 as the deadline for the exchange of expert reports. ECF 145 at ¶ 2(b); see Fed. R. Civ. P. 26(a)(2)(D) ("[A] party must make [expert witness] disclosures at the times and in the sequence that the court orders."). The plaintiffs, however, did not abide by the deadline. On July 16, 2024, one week before trial, the plaintiffs filed a 17-page expert report with 141 pages of exhibits and disclosed that they planned to introduce the expert testimony of a statistician, Dr. Bernard Siskin. See ECF 256. Counsel for the defendant asserted that plaintiffs' counsel advised him for the first time on a Zoom conference late in the afternoon on Friday, July 12, 2024 that the plaintiffs had retained Dr. Siskin. ECF 277-1 at 2 n.1.

Prior to plaintiff's untimely disclosure, the Court had noted in a June 25, 2024 Order that "neither party has listed any witness to testify about statistical significance," but allowed the parties the opportunity to serve a **summary** of statistical testimony by July 6, 2024. ECF 219. The Court reiterated in a July 2, 2024 Memorandum reviewing several decisions on the types of evidence allowed or required at trial in an EPA case, that counsel consider using "any statistical evidence to show that Plaintiffs were paid less than comparable male teachers." ECF 227; see ECF 229 (stating that "[i]f either or both parties have identified statistical evidence ... the Court will consider

6

admitting this evidence").[6]  Rather than filing a summary of statistical evidence, as the Court

ordered, the plaintiffs retained an expert and filed an entire expert report days before trial was set

to commence.  Evid. Hearing. Tr. (7/22/2024), ECF 293, at 37:20–21 ("Court:  there's a big

difference between statistical evidence and an expert opinion about statistics.").

     The Court accordingly precluded the expert testimony of Dr. Siskin "because it was filed

too late."  Trial Tr. (7/23/2024), ECF 294, at 7:3-4.

### b.  Deposition Designations

     Plaintiffs' counsel also filed proposed deposition designations for trial almost a month past

the deadline to do so.  Per the Court's May 16, 2024 final pretrial Order, the parties were required

to serve any deposition designations by June 21, 2024.  ECF 182 at ¶ 6.  Plaintiffs' counsel did not

file his notice of deposition designations until July 19, 2024.  ECF 266.  As with the statistics

expert, the Court precluded the plaintiffs' deposition designations "because they were filed too

late."  Trial Tr. (7/23/2024), ECF 294, at 6:23–25.

### 3.  Plaintiffs' Counsel Disregards Repeated Court Orders Regarding Male Comparators and Representative Testimony

     Perhaps most egregiously, plaintiffs' counsel repeatedly disregarded the Court's Orders

requiring the plaintiffs to designate specific male comparators and a few class representatives to

testify at trial, in accord with what the Court views as required in the Third Circuit.

     In view of the sprawling collective class numbering several hundred plaintiffs and

voluminous amounts of data concerning the plaintiffs' and their "comparators," the Court ordered

the plaintiffs to prepare and file a "protocol" identifying all documents and other evidence showing

---

[6] The Court twice extended the plaintiffs' deadline for submitting summaries of statistical testimony to July 16, 2024.
ECF Nos. 232, 247.

valid "comparators" for admission at trial. ECF 185; see Evid. Hearing Tr. (7/22/2024), ECF 293, at 5:12–21 ("[G]iven the large amounts of data and the many individuals involved, [ ] I thought it was essential to have a chart that would indicate for each female teacher, at least, the key data about when they started in Central Bucks, and if they're still employed there, or if not, when they left, and other data."). The Court appointed a Master pursuant to Rule 53 of the Federal Rules of Civil Procedure to review this evidence with the goal of preparing a "chart" summarizing salary data for teachers employed by Central Bucks that would be presented at trial as a Rule 1006 summary exhibit in lieu of all members of the collective class testifying individually.

Shira Yoshor, Esquire, an attorney practicing with a private law firm, was appointed to serve as Master.[7] Pursuant to the Court's June 25, 2024 Order, see ECF 219, Ms. Yoshor held several meetings with counsel and as the trial date approached, the Court learned from Ms. Yoshor that the chart had been prepared and was, just before trial, agreed to by both parties as accurate and ready to be admitted into evidence. The Court approved Ms. Yoshor's Report and Recommendation and admitted the summary charts into evidence.[8] ECF 283; Trial Tr. (7/24/2024), ECF 295, at 98:24–99:10.

### a. Pretrial Court Orders

While the charts summarized voluminous data, they were "not a substitute for testimony" because the plaintiffs "still ha[d] the issue of [ ] effort, skill, and responsibility in the statute."

---

[7] The Court notes, without reaching any conclusions, that it entered an order requiring both sides to pay one-half of the Master's fee. ECF 208, 339. It subsequently appeared that although the defendant paid its one-half share, plaintiffs' counsel has asserted that a portion of the funds that he forwarded to pay his one-half share never reached the Master because of fraud that resulted in Plaintiffs' counsel wiring the funds to a fictitious email address. This appears to have been criminal activity, and the Court reported these facts to the U.S. Attorney's Office for the Eastern District of Pennsylvania. ECF 348. This issue remains unresolved.

[8] A copy of the plaintiffs' summary chart can be found at ECF 320-1 and the defendant's summary chart at ECF 319-3.

Evid. Hearing Tr. (7/22/2024), ECF 293, at 24:19–21; id. at 28:11–17 ("The chart has empirical data[.] … That's not testimony about the words of the statute -- of skill, effort, and responsibility."). Accordingly, several weeks before the trial, on July 3, 2024, the Court issued a scheduling order (1) allowing the plaintiffs to designate three or four representative female teachers from the collective class to testify,[9] (2) requiring the plaintiffs to file an offer of proof identifying one or more male comparators to testify at trial, and (3) requiring the defendant to file a trial brief identifying up to three or four additional male comparators. ECF 229. As the Court explained in its Memorandum, the Court required that the plaintiffs file this offer of proof of male comparators by July 12, 2024 in light of the Second Circuit's suggestion in Lavin-McEleney v. Marist College, 239 F.3d 476, 478 (2d Cir. 2001) that evidence from only one male comparator alone may be insufficient to prove discrimination under the Equal Pay Act, ECF 227 at 3.

The plaintiffs, however, refused to identify specific male comparators to testify at trial, as required by this Court. The plaintiffs at first filed no offer of proof by the Court's July 12 deadline. In response, the Court immediately ordered on July 16, 2024 that the plaintiffs "must file the required offer of proof no later than **noon tomorrow, July 17, 2024**" because "Plaintiffs have failed to follow this Court's July 3, 2023 Order … requiring Plaintiffs to file an offer of proof identifying one or more male comparators to testify at trial by July 12, 2024[.]" ECF 207 (Civil Action No. 20-1995). Plaintiffs' counsel then filed an offer of proof on the same day that did not comply with the Court's requirements; the offer of proof identified one male employee, Keith Sinn, who was not a comparator, but was to testify at trial to pursue counsel's theory that all men in the school district are valid comparators to all women in the school district. ECF 255

---

[9] The Court required that the plaintiffs identify the three or four representative female teachers by July 15, 2024, ECF 238, and further clarified that the named plaintiffs may testify in addition to the three or four representative plaintiffs to be designated for trial testimony, ECF 246.

(contending that "all men and women teachers in the District—including classroom teachers, nurses, school psychologists, guidance counselors, speech pathologists and librarians—all perform substantially equal work compared with one another and are, therefore, comparators of one another"). Again, rather than identify specific comparators, plaintiffs' counsel doubled-down on his position in response to the district's Motion in Limine (ECF 223), insisting that "ALL teachers – men and women – are comparators to each other no matter the subject matter they teach and no matter whether they teach elementary, middle or high school." ECF 257 at 1 (emphasis in original).

On July 17, 2024, following the plaintiffs' refusal to identify specific male comparators for trial as this Court required, this Court issued an Order explicitly "reject[ing] as inconsistent with Third Circuit case law Plaintiffs' proposal that all teachers, men and women, are comparators to each other." ECF 262. The Court stated that trial would proceed with the two plaintiffs and three or four other female teachers designated by the plaintiffs, as comparators to the same number of male teachers designated by the plaintiffs as alleged comparators. Id. The Court further ordered that if the plaintiffs have Third Circuit precedential authority supporting their position, they must provide it to the Court forthwith. Id. The plaintiffs subsequently filed a memorandum citing several cases that did not support their proposition. ECF 264.

### b. Evidentiary Hearing

The Court scheduled an evidentiary hearing for July 22, 2024, the day before trial was scheduled to start, and required both counsel to have present at the hearing "designated representative witnesses and also any persons designated as comparator witnesses[.]" ECF 238 at ¶ 3, ECF 263. Plaintiffs' counsel disregarded the Court's directive to have designated male comparator witnesses present at the hearing. Instead, plaintiffs' counsel only brought one male

witness to the hearing, Keith Sinn, who was not "identified ... as a comparator," but rather was at the hearing solely to further counsel's already rejected position that "all teachers perform substantially equal work" and thus all males are comparators to all females.[10]  Evid. Hearing Tr. (7/22/2024), ECF 293, at 14:23–15:1.  The Court admonished plaintiffs' counsel for failing to identify male comparators and for repeatedly disregarding the Court's Orders, stating "[y]ou have yet to file an offer of proof.  That was a court order.  And when you missed the deadline for that, I then entered an order that was due in two days.  And you still haven't filed it, and that was two weeks ago."  Id. at 15:22–16:1; see also id. at 17:17–21; 19:3–20:3; 22:11–16; 23:19–24:10 27:21–28:3.[11]

### c. Trial

On the first day of trial, prior to opening statements, the Court ruled from the bench that "[t]he Plaintiff will have to identify male comparators as required by the Third Circuit and other courts[.] ... Now, as we've discussed, Plaintiff's counsel was delayed in doing this without any good reason."  Trial Tr. (7/23/2024), ECF 294, at 4:10–11.  The Court required the plaintiffs to present testimony of three male comparators.  Id.

Notwithstanding the Court's exhaustive efforts to require the plaintiffs to identify specific male comparators to testify at trial, plaintiffs' counsel continued to resist, still seeking to only present to the jury the summary chart of all male employees in the defendant school district as comparators to the female opt-in plaintiffs rather than the testimony of three identified male

---

[10] The plaintiffs had earlier proposed Mr. Sinn as a comparator witness in their July 16, 2024 offer of proof who would testify that "all men and women teachers ... [are] comparators of one another," ECF 255, but the Court rejected such evidence as "inconsistent with Third Circuit case law," ECF 262.  Plaintiffs' counsel failed to hew to the Court's requirements at the evidentiary hearing.

[11] The Court engaged in a lengthy on-the-record colloquy with counsel reiterating its rejection of counsel's position as to the male comparators.  See Evid. Hearing Tr. (7/22/2024), ECF 293, at 14–29.

comparators.  The Court reaffirmed on the first day of trial that counsel's proposal "is ... not acceptable, that that's not how the Third Circuit requires these cases to be tried."  Trial Tr. (7/23/2024), ECF 294, at 5:9–17.  During the trial, the Court again questioned plaintiffs' counsel about his obstinance, stating "[m]y direction was name your three male comparators for this trial." Trial Tr. (7/24/2024), ECF 295, at 5:24–6:18.  When asked if he was prepared to call the three comparators as witnesses, plaintiffs' counsel responded "[n]o, Your Honor, I don't intend to call them as witnesses in this case because the data pertaining to them is contained in [the plaintiffs' summary chart]."  Id. at 5:24–6:18.  Plaintiffs' counsel never called the comparators as witnesses.

At the trial, both named plaintiffs—in addition to several other designated witnesses—testified in support of their claims.  The defendant also called several witnesses to attempt to refute the evidence presented by the plaintiffs and support its affirmative defense under the EPA.[12]  As noted above, the jury could not agree on a verdict and a mistrial was entered on the docket.  ECF 305.

### B.  The Court Decertifies the Collective Class in Marinello

Considering the history of this case, as well as the evidence presented in both summary exhibits and at trial, the Court in its discretion determined it proper to decertify the collective action and allow each plaintiff to file their own individual action.

#### 1.  Summary Charts Show The Plaintiffs Are Not Similarly Situated

Based on the evidence in the summary charts and the evidence presented at trial, the Court determined that the certification of a collective class was in error, mainly because the contents of the chart which showed significant differences in male and female salaries for various individuals

---

[12] The trial transcripts are docketed at ECF 294–95, 307–09.

were confusing and difficult to identify the female opt-in plaintiffs that were paid less than male comparators. On August 1, 2024, the Court ordered that the collective class be decertified. ECF 313. The Court, however, made clear in its Order that (1) the individual opt-in plaintiffs may initiate their own lawsuits if they believe that they can present facts in support of their assertions that their claims are not barred by the statute of limitations and (2) the decertification decision is not intended to impact the ability of the two named plaintiffs, Rebecca Cartee-Haring and Dawn Marinello, to proceed further with respect to their individual cases. ECF 313, 315.

The plaintiffs, however, did not accept the Court's Decertification Order, insisting in their August 9, 2024 post-trial Motion, that "the individuals who opted-in [ ] were and remain actual Plaintiffs in the case notwithstanding the Court's order decertifying this case as a collective action." ECF 318 at 1 n.1. The plaintiffs further insisted on proceeding with an assertion that all female teachers—including nurses, counselors, and other professional employees—employed by the defendant continued to be part of the case as having been included in the collective action and that the appropriate "comparators" are "all" male teachers.

As it had already done numerous times in this case, the Court issued an Order on August 23, 2024 rejecting both of these contentions with prejudice. ECF 326. The Court's Order made clear that: (1) "[t]his case will proceed with the two named Plaintiffs as the only parties at this time," (2) there is [no] authority for the Plaintiffs' position at the prior trial that all male teachers are valid comparators to all female teachers in the Defendant school system," and (3) "Plaintiffs' position at trial that basically all professional employees are appropriate comparators to each other" is incorrect.[13] Id.

---

[13] See, e.g., Heller v. Elizabeth Forward Sch. District, 182 Fed. App'x. 91, 95 (3d Cir. 2006) (non-precedential) (holding that substantial equality must be determined by direct comparison to "proper comparator[s]"); Third Circuit Model Jury Instructions, Section 11.1.1 (requiring the jury to compare "two jobs" in determining whether the

### C.  **The Instant Case**

In plaintiffs' counsel's latest attempt to circumvent this Court's orders, plaintiffs' counsel filed this new action, captioned Jakubik v. Gibson, Civil Action No. 25-33, on January 3, 2025, purportedly on behalf of 130 female teachers that had been part of the decertified collective class in Marinello.  The Court found that this was a misjoinder and dismissed the Complaint, without prejudice, as to all of the named Plaintiffs except for the first-named Plaintiff, whose name appears in the caption, Karyn Jakubik.  Civil Action No. 25-33, ECF 3.  The Court required Ms. Jakubik to amend her Complaint removing the allegations of the 129 other improperly joined plaintiffs.  Id.

Plaintiffs filed a Notice of Appeal on February 12, 2025 (Civil Action No. 25-33, ECF 6) and simultaneously filed the "Notice of Plaintiffs' Election to Stand Upon Original Complaint," asserting that the Court's Order of dismissal without prejudice (Civil Action No. 25-33, ECF 3) became a final and appealable order.  The Court files this Memorandum not to take any position as to the appropriateness of the filing of the appeal, but to give the Third Circuit the procedural background that appears to be somewhat unique.

### D.  **Current Status of Marinello**

As far as the Marinello case goes, this Court had entered certain orders prior to any second trial, trying to arrive at a settlement between the parties, without any assurance that a settlement can be received.  The Court determined that one of the roadblocks to settlement of the Marinello case was the unrealistic demand that plaintiffs' counsel had made in the millions of dollars, while

---

plaintiff's job required "substantially equal skill, effort, and responsibility as that of the male employee(s)"); Houck v. Va. Polytechnic Inst., 10 F.3d 204, 206 (4th Cir. 1993) (Plaintiff "may not compare herself to a hypothetical male with a composite average of a group's skill, effort, and responsibility, but must identify a particular male for the inquiry").

the defendant had insisted that there were no damages recoverable whatsoever. <u>See</u> ECF 351, 357–58.

The Court entered an order on February 11, 2025 (ECF 359) requiring the plaintiffs and the defendant to compute damages in accordance with the standard Third Circuit Model Jury Instructions for Equal Pay Act cases, as follows:

> *[**Instruct as follows if the plaintiff's pay is compared to a single male employee:**]*

> If you find that [defendant's] violation was willful, then you must award [plaintiff] the amount of damages that compensates her for the difference between what she was paid (in both wages and benefits) and what [name of male employee] was paid (in both wages and benefits) during the period starting [three years before the date the lawsuit was filed] through the date of your verdict. However, if you find that [defendant's] violation of the Equal Pay Act was not willful, then you must award [plaintiff] the difference between what she was paid (in both wages and benefits) and what [name of male employee] was paid (in both wages and benefits) during the period starting [two years before the date the lawsuit was filed] through the date of your verdict. In other words, [plaintiff] is entitled to damages for an extra year if she proves that [defendant's] violation was willful.]

> *[**Instruct as follows if the plaintiff's pay is compared to more than one male employee:**]*

> If you find that [defendant's] violation was willful, then you must award [plaintiff] the amount of damages that compensates her for the difference between what she was paid (in both wages and benefits) and the average amount of what [names or job titles of male employees] were paid (in both wages and benefits) during the period starting [three years before the date the lawsuit was filed] through the date of your verdict. However, if you find that [defendant's] violation of the Equal Pay Act was not willful, then you must award [plaintiff] the difference between what she was paid (in both wages and benefits) and the average amount of what [names or job titles of male employees] were paid (in both wages and benefits) during the period starting [two years before the date the lawsuit was filed] through the date of your verdict. In other words,

> [plaintiff] is entitled to damages for an extra year if she proves that
> [defendant's] violation was willful.]

Third Circuit Model Jury Instructions 11.3.3.

The responses of both the plaintiffs and the defendant are not acceptable. The plaintiffs' calculation assumes damages can go back to 2010 without any justification provided. The defendant ignored the Court's Order and declined to make the computation required by the Third Circuit's binding instructions.

Rather than impose sanctions, this Court has determined that the best resolution is to have a second trial of this case, to proceed in accordance with the plaintiffs' supplemental offer of proof (ECF 334),[14] and hopefully to achieve a unanimous verdict, to be followed by a final judgment, whether for the plaintiffs or the defendant. Then, one or both parties can take an appeal to the Third Circuit and raise all the issues discussed above as well as the validity of any final judgment to be entered after this forthcoming second trial. The Court is attaching a copy of the procedural order it filed on February 27, 2025 (see 21-2587, ECF 363).

## II.    DISCUSSION

The Court decertified the collective class in Marinello on August 1, 2024, dismissing all the opt-in plaintiffs without prejudice to filing their own individual lawsuits in separate actions. The Court's Decertification Order came on the heels of a five-day trial in which the jury was unable to reach a unanimous verdict and where it became clear that all plaintiffs in the collective class were not similarly situated. In particular, the summary exhibits (ECF 319-3, ECF 320-1) which were created to streamline presentation of key information pertaining to each collective class member and comparator employed by Central Bucks, instead sowed considerable confusion

---

[14] The plaintiffs, pursuant to this Court's Order, identified two male comparators for each named plaintiff.

at trial.[15]  As evidenced in part by the mistrial, the jury could not unanimously make determinations about the background, qualifications, prior experience, and the jobs performed by female collective class members as compared to the male comparators.

Rather than filing individual lawsuits for the former opt-in plaintiffs after the Court determined they are not similarly situated, the same counsel representing the former opt-in plaintiffs in Marinello filed this instant lawsuit in a seeming attempt to "end-run-around" the Court's Decertification Order, another act of misfeasance in a long history of plaintiffs' counsel's disregard for this Court's orders.  Counsel's attempted joinder of 130 Plaintiffs in this new action suffers the same flaws as counsel's prior approach in Marinello with respect to the collective class by naming as plaintiffs female teachers, nurses, counselors, and other professionals that the Court already found were not similarly situated.

The parties and the Court expended significant time and resources in Marinello where the collective action resulted in no verdict.  The Court quickly determined here that counsel's latest attempt to join former opt-in Plaintiffs in spite of the Court's prior Decertification Order would generate additional needless expense.  Within six business days of the instant Complaint being filed, the Court exercised its discretion under Rule 21 to *sua sponte* dismiss all parties other than the first-named Plaintiff.  Fed. R. Civ. P. 21; see 7 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 1652 (3d ed. 2001) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay.").

---

[15] The summary charts were intended to provide information about the collective class members in lieu of all members of the collective class testifying individually at trial.

The Court's dismissal Order (Civil Action No. 25-33, ECF 3) is consistent with decisions from courts across the country that have dismissed all but the first-named plaintiff in materially identical factual scenarios.[16] One opinion cited in the Court's Order is the Fifth Circuit's decision in Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516 (5th Cir. 2010), which held that the district court did not abuse its discretion when it refused to allow hundreds of former opt-in plaintiffs in a decertified companion suit to join together as plaintiffs in a new suit. Though not binding in this jurisdiction, the Fifth Circuit rejected the very argument that counsel makes here in his Notice, holding that "denying joinder in this case" notwithstanding employment discrimination cases where courts have found that allegations of a pattern or practice of discrimination may satisfy Rule 20's standard, "would still not be an abuse of discretion [because] district courts have considerable discretion to deny joinder when it would not facilitate judicial economy[.]" Id. at 521–22; ECF 5 at 3–4.[17]

The Court is aware of at least one other case within the Third Circuit where, after an order decertifying an FLSA collective action, the same counsel filed a new lawsuit naming as plaintiffs certain employees who were previously opt-in plaintiffs and asserted the same legal theories for collective action treatment as had been already rejected. Belle v. Univ. of Pittsburgh Med. Ctr.,

---

[16] See, e.g., Abrams v. City of Los Angeles, No. 2:14-cv-05646, 2014 WL 6473418, at *2 (C.D. Cal. Nov. 17, 2014), aff'd sub nom. Alvarado v. City of Los Angeles, 720 F. App'x 889 (9th Cir. 2018) (finding that "if plaintiffs in [the companion case] were not certified under the less stringent ["similarly situated"] standard, Plaintiffs here must be dismissed for misjoinder under Rules 20 and 21 if the concerns and reasoning underlying those concerns articulated in the Decertification Order are not addressed in this Complaint"); Weaver v. Cnty. of Orange, No. 10-cv-00101, 2010 WL 11595858, at *2 (C.D. Cal. Apr. 29, 2010) ("Plaintiffs are doing an end-run and circumventing the Court's prior decertification order by filing their claims in a single lawsuit."); Cunningham v. Roundy's Illinois, LLC, No. 21-cv-5368, 2022 WL 2463048 (N.D. Ill. July 6, 2022); Ebbs v. Orleans Par. Sch. Bd., No. 04-cv-1198, 2014 WL 4072134 (E.D. La. Aug. 15, 2014).

[17] Counsel's Notice even cites as support for his position two of the same cases that the appellants in Acevedo cited – Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333–34 (8th Cir. 1974) and Alexander v. Fulton County, 207 F.3d 1303, 1323 (11th Cir. 2000).

18

No. 13-cv-1448, 2014 WL 4828899 (W.D. Pa. Sept. 29, 2014). In <u>Belle</u>, as here, the plaintiffs in

their new case "tweaked some aspects of their pleadings," but "their theories of liability remain[ed]

materially unchanged." <u>Id.</u> at *1. The court in <u>Belle</u> dismissed the claims of the opt-in plaintiffs

without prejudice to the refiling of individual actions. In upholding the district court's dismissal,

though addressing a different issue pertaining to appellate jurisdiction, the Third Circuit

commented in relevant *dicta* that:

> While a dismissed opt-in plaintiff retains the ability to pursue
> *individual* claims after a district court decertifies a collective action,
> we have located no authority … discussing the approach … here—
> namely, [plaintiff's] decision, upon dismissal without prejudice [ ],
> to re-file not only his individual claims, but also to try to resurrect
> substantially similar collective action allegations.

<u>Halle v. W. Penn Allegheny Health Sys. Inc.</u>, 842 F.3d 215, 226 n.11 (3d Cir. 2016) (emphasis in

original).

While the instant Complaint does not directly seek certification of a collective action for a

second time as in <u>Belle</u>, but instead purportedly joins together many of the former <u>Marinello</u> opt-

in plaintiffs under Rule 20, the "similarly situated" standard for proceeding as an FLSA collective

action is less stringent than Rule 20's standard for permissive joinder of plaintiffs. <u>Halle</u>, 842 F.3d

at 225 n.9 ("[O]pt-in plaintiffs are held to a less stringent standard than under Rule 20 of the

Federal Rules of Civil Procedure."); <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1095 (11th Cir.

1996). Having already decertified the collective class in <u>Marinello</u>, finding after trial that the

plaintiffs are not "similarly situated," the Court thus concluded that Plaintiffs here did not meet

the higher standard of joinder under Rule 20. Accordingly, the Court dismissed all but the first-

named Plaintiff for misjoinder.

19

BY THE COURT:

Dated: 3/12/2025

_____

**MICHAEL M. BAYLSON**
**United States District Court Judge**

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 25\25-33 Jakubik v. Gibson\25cv33 Memorandum.docx



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| REBECCA CARTEE-HARING<br><br>v.<br><br>CENTRAL BUCKS SCHOOL DISTRICT | CIVIL ACTION<br><br>NO. 20-1995 |
|---|---|
| DAWN MARINELLO,<br>*individually and on behalf of similarly<br>situated female employees,*<br><br>v.<br><br>CENTRAL BUCKS SCHOOL DISTRICT | CIVIL ACTION<br><br>NO. 21-2587 |

## <u>ORDER</u>

**AND NOW** this 27th day of February, 2025 it is **ORDERED**:

1.      Trial of these cases, now to be consolidated for trial, shall begin on Monday, May

5, 2025, at 9:30 a.m. IN COURTROOM 3A beginning with jury selection.

2.      Plaintiffs may update the expert report of Mr. Siskin no later than March 14, 2025.

3.      If Plaintiffs intend to call any other experts at trial, they must serve expert reports

no later than March 14, 2025.

4.      Defendant must serve any expert reports, whether original or supplemental, no later

than March 28, 2025.

5.      Any depositions of experts shall be scheduled promptly and must be completed no

later than April 4, 2025.

6.      Any motion regarding expert testimony must be filed by April 10, 2025.  Responses

are due by April 17, 2025.

1

7.    Any supplemental deposition designations not previously made must be made by March 28, 2025.  Counter-designations are due seven (7) days later.

8.    Any motions in limine must be filed no later than April 3, 2025.  Responses are due within seven (7) days.

9.    The Court will have a pretrial conference with counsel and their clients present in Courtroom 3A on April 14, 2025, at 10:30 a.m.

10.    As the Court intends to limit the Plaintiffs' evidence to the two male comparators identified in ECF 334, it is doubtful that the chart admitted in the first trial will be admissible in this second trial.  Counsel may file briefs on this topic by April 10, 2025, limited to ten (10) pages.

11.    Plaintiffs shall follow the supplemental offer of proof previously filed (ECF 334). However, the Court intends to limit Plaintiffs to the two male comparators identified by Plaintiffs.

12.    This trial will be limited to issues of liability.  If there is a jury verdict in favor of Plaintiffs, evidence on damages will follow immediately before the same jury.

13.    Points for Charge on issues of liability and damages shall be filed no later than April 18, 2025.

14.    Voir dire requests shall be filed by April 25, 2025.

**BY THE COURT:**

**/s/ Michael M. Baylson**
_____
**MICHAEL M. BAYLSON**
**United States District Court Judge**

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 20\20-1995 Cartee-Haring v Central Bucks Sch\20cv1995 and 21cv2587 order re trial May 2025  02262025.docx

2